**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **TRAVIS HOGELAND,** | § | |
| | § | |
| **Plaintiff,** | § | **Civil Action No. _____** |
| | § | |
| **v.** | § | |
| | § | |
| **SPACE EXPLORATION** | § | **JURY TRIAL DEMANDED** |
| **TECHNOLOGIES** | § | |
| **CORP. d/b/a SpaceX,** | § | |
| | § | |
| **Defendant.** | § | |

---

**PLAINTIFF'S ORIGINAL COMPLAINT**

---

Plaintiff Travis Hogeland files this Original Complaint against Defendant Space Exploration Technologies Corp. d/b/a SpaceX, and alleges as follows:

**I.  NATURE OF THE CASE**

1.    This is a whistleblower-retaliation and wrongful-discharge action. Mr. Hogeland brings his primary claim under the anti-retaliation provision of the False Claims Act, 31 U.S.C. § 3730(h), and pleads, in the alternative, claims under the Americans with Disabilities Act and Texas common law.

2.    SpaceX employed Mr. Hogeland at its McGregor, Texas rocket-engine test facility, where he worked in facilities, painting, and fabrication. His work included painting and preparing rocket-engine test stands, support structures, piping systems, and related components used in connection with federal-contract work.

3.    Mr. Hogeland repeatedly objected because SpaceX was not using the coating system that government specifications and work orders required. The specifications called for a

1

corrosion-resistant epoxy or comparable government-specified coating system. SpaceX instead used a cheaper direct-to-metal enamel or similar non-specification paint.

4. The problem was more than a paint preference. The wrong coating created rust, peeling, chipping, and foreign-object-debris risks, and it created a federal-contract compliance problem: SpaceX performed work on components and structures for federally funded rocket-engine testing while using materials that did not match the specifications reflected in the work orders.

5. Mr. Hogeland complained to his lead and his supervisor, told them the paint did not match the government specifications, and began gathering work orders, purchase records, and photographs so that he could escalate the issue to higher management or federal authorities. Reporting that conduct was no part of a painter's job.

6. SpaceX did not correct the problem. It terminated Mr. Hogeland on August 12, 2025, and its termination letter gave no reason. SpaceX terminated Mr. Hogeland because he reported, investigated, objected to, and tried to stop conduct that he reasonably believed could cause SpaceX to submit, support, or receive payment on false claims or false certifications for federal-contract work.

## II.  PARTIES

7. Plaintiff Travis Hogeland is an individual who resides in Waco, McLennan County, Texas. SpaceX employed him at its McGregor, Texas facility from approximately December 2022 until August 12, 2025.

8. Defendant Space Exploration Technologies Corp. d/b/a SpaceX is a Delaware corporation with its principal place of business at 1 Rocket Road, Starbase, Texas 78521. SpaceX does business in Texas, including at its rocket-engine test facility at 1 Rocket Road, McGregor,

McLennan County, Texas 76657. SpaceX may be served through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

### III.  JURISDICTION AND VENUE

9.      This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under the False Claims Act, 31 U.S.C. § 3730(h), and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. Section 3730(h) expressly authorizes an action in the appropriate United States district court. 31 U.S.C. § 3730(h)(2).

10.     This Court has supplemental jurisdiction over Mr. Hogeland's Texas common-law claim under 28 U.S.C. § 1367(a) because it forms part of the same case or controversy as the federal claims.

11.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred here. SpaceX operates the McGregor test facility in this District; Mr. Hogeland worked there; his protected activity occurred there; and his termination arose from events there. McLennan County lies in the Waco Division. 28 U.S.C. § 124(d)(1).

12.     The retaliation occurred on August 12, 2025. This action is timely under the False Claims Act, which permits a civil action under § 3730(h) within three years after the date the retaliation occurred. 31 U.S.C. § 3730(h)(3).

13.     Mr. Hogeland has satisfied all conditions precedent to his ADA claims. He timely filed EEOC Charge No. 450-2026-00905, alleging disability discrimination and retaliation; the EEOC issued a Notice of Right to Sue dated June 2, 2026; and he files this action within ninety days of receiving that Notice.

## IV.  LEGAL FRAMEWORK

14.     The False Claims Act protects employees who engage in lawful acts in furtherance of an FCA action or other efforts to stop one or more FCA violations. 31 U.S.C. § 3730(h)(1).

15.     A plaintiff asserting FCA retaliation must plead and prove that he engaged in protected activity, that the employer knew of the protected activity, and that the employer discriminated against him because of that protected activity. *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994); *United States ex rel. Patton v. Shaw Servs., L.L.C.*, 418 F. App'x 366, 371-72 (5th Cir. 2011) (per curiam).

16.     Protected activity includes internal reporting and investigation when the employee acts in furtherance of an FCA action or makes other efforts to stop conduct that reasonably could lead to FCA liability. 31 U.S.C. § 3730(h)(1); *United States ex rel. Bias v. Tangipahoa Parish Sch. Bd.*, 816 F.3d 315, 323-24 (5th Cir. 2016).

17.     The employee need not prove an actual underlying FCA violation to state a retaliation claim. The question is whether his conduct was aimed at matters that reasonably could lead to a viable FCA action or to efforts to stop one or more FCA violations. *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 331-32 (5th Cir. 2011); *United States ex rel. George v. Boston Sci. Corp.*, 864 F. Supp. 2d 597, 606-07 (S.D. Tex. 2012).

18.     The employer must have notice that the employee is acting in furtherance of an FCA action or otherwise attempting to stop fraud against the government. *Robertson*, 32 F.3d at 951-52; *Patton*, 418 F. App'x at 372.

## V.  FACTUAL ALLEGATIONS

**A.  SpaceX employed Mr. Hogeland at the McGregor test facility.**

4

19. SpaceX employed Mr. Hogeland for approximately 2.8 years.

20. Mr. Hogeland worked at SpaceX's McGregor, Texas test facility.

21. He worked in facilities, painting, and fabrication.

22. His duties included painting and preparing rocket-engine test stands, test-stand components, support structures, piping systems, and related infrastructure.

23. Rocket engines are mounted to those test stands during testing at the McGregor facility.

24. Mr. Hogeland processed and signed off on work orders throughout his employment.

25. Many of the work orders involved large test stands and test-stand components.

26. Many of the work orders reflected coating specifications tied to government work, including work associated with NASA, the Department of Defense, the Space Force, and federally funded programs and contracts.

## B. The work orders required specified corrosion-resistant coatings.

27. The work orders and specifications required a corrosion-resistant coating system.

28. The required system included an epoxy or comparable government-specified coating.

29. The required system also included preparation, application, coating, and dry-film-thickness requirements.

30. Mr. Hogeland understood that the specified coating system mattered because test stands and related components are exposed to demanding conditions at a rocket-engine test facility.

31. He also understood that coating failure could cause rust, peeling, chipping, dust, and foreign-object debris.

32. SpaceX trained its employees on foreign-object-debris and foreign-object-damage concerns.

33. Mr. Hogeland understood that foreign-object debris could create safety hazards in and around rocket-engine testing.

**C. SpaceX used non-specification paint on federal-contract work.**

34. Despite the specifications, SpaceX's paint department used a direct-to-metal enamel or similar non-specification paint.

35. That product did not satisfy the specified coating system.

36. SpaceX used the non-specification paint on test stands, test-stand components, and related structures.

37. SpaceX also directed or allowed employees to paint over rust and insufficiently prepared surfaces.

38. The practice created obvious quality and safety problems, and it created a federal-contract compliance problem.

39. SpaceX performed work on federally funded or federally contracted components and structures while using materials and methods that did not match the specifications reflected in the work orders.

40. Mr. Hogeland reasonably believed that SpaceX's use of non-specification paint could cause SpaceX to make or support false claims for payment, false records, or false certifications concerning compliance with federal-contract requirements.

41. Mr. Hogeland also reasonably believed that continued use of the wrong paint could conceal nonconforming work from federal contracting agencies, auditors, inspectors, and the persons responsible for payment and acceptance.

**D. Mr. Hogeland repeatedly objected and tried to stop the practice.**

42.    Mr. Hogeland raised the paint issue repeatedly.

43.    He complained to his direct lead, Jeremy Kirkpatrick.

44.    He also complained to his supervisor, Richard "Rick" Conway.

45.    He told them that the paint did not match the specifications shown on the work orders.

46.    He told them that the practice created serious foreign-object-debris risks.

47.    He told them that the practice created a government-contract compliance problem.

48.    Mr. Hogeland's complaints were not ordinary workplace gripes; they concerned nonconforming work, government specifications, safety risks, work-order accuracy, and federal-contract compliance.

49.    Reporting that conduct fell outside Mr. Hogeland's ordinary duties as a painter, which put SpaceX on notice that his complaints were protected.

50.    SpaceX knew, through Kirkpatrick, Conway, and other supervisory personnel, that Mr. Hogeland was challenging the use of non-specification paint on federal-contract work.

51.    SpaceX did not correct the issue. Instead, Mr. Hogeland was told, in substance, that the non-specification-paint practice was "job security."

**E. Mr. Hogeland investigated and prepared to escalate the issue.**

52.    Before his termination, Mr. Hogeland began gathering documents and evidence.

53.    He gathered, or attempted to gather, work orders showing the required specifications.

7

54.    He gathered, or attempted to gather, purchase records showing the paint SpaceX actually bought and used.

55.    He gathered, or attempted to gather, photographs showing rust, coating failure, improper preparation, and nonconforming painted components.

56.    He did so because he intended to escalate the issue to higher management or federal authorities, and his supervisors knew of that intent.

57.    Mr. Hogeland's investigation and planned escalation were lawful acts in furtherance of efforts to stop false claims, false records, false certifications, and nonconforming federal-contract work.

**F.  Mr. Hogeland disclosed a disability, and SpaceX terminated him.**

58.    Mr. Hogeland has anxiety and depression, conditions that substantially limit major life activities, including sleeping, concentrating, and interacting with others, and that SpaceX regarded as a disability. 42 U.S.C. § 12102.

59.    During the events surrounding his separation, Mr. Hogeland disclosed his anxiety and depression to SpaceX's Human Resources, identified the medication he took, and asked Human Resources to address his lead's treatment of him.

60.    On or about August 12, 2025, Mr. Hogeland had an argument with Kirkpatrick, precipitated in substantial part by his continuing objections to the paint issue and related compliance concerns.

61.    SpaceX supervisors then met privately during lunch and excluded Mr. Hogeland.

62.    SpaceX summoned Mr. Hogeland to Human Resources and terminated him that same day, within days of his disability disclosure.

63.     SpaceX's termination letter stated no reason for the termination; it stated only that Mr. Hogeland's employment was terminated effective August 12, 2025, that his benefits would end, and that his stock options, stock awards, and cash-payment awards would be forfeited, canceled, or subject to SpaceX's plans and agreements.

64.     SpaceX's refusal to identify a legitimate reason for the termination supports an inference of pretext, and the timing supports an inference of retaliation.

65.     SpaceX terminated Mr. Hogeland after he complained about non-specification paint, after he identified federal-contract compliance concerns, after he disclosed his disability, and before he could escalate his concerns to higher management or federal authorities.

**G.  The Texas Workforce Commission found the discharge was not for work-connected misconduct.**

66.     After the termination, the Texas Workforce Commission investigated Mr. Hogeland's unemployment claim.

67.     The Texas Workforce Commission determined that SpaceX discharged Mr. Hogeland for a reason that was not misconduct connected with the work, and it awarded benefits.

68.     SpaceX did not appeal that determination, which is consistent with Mr. Hogeland's allegation that SpaceX's stated or unstated reason for the termination was pretextual.

**H.  Mr. Hogeland suffered damages.**

69.     Mr. Hogeland lost wages and benefits, including health-insurance coverage.

70.     He lost stock, equity, and cash-payment awards, including approximately $20,000 in unvested stock or equity value and approximately $7,500 in cash-payment awards.

71.    He suffered consequential financial losses, including a vehicle repossession and housing instability.

72.    He suffered emotional distress, anxiety, sleeplessness, and other mental anguish.

73.    He has incurred, and continues to incur, attorney's fees, costs, and expenses.

## VI.  CAUSES OF ACTION

74.    Mr. Hogeland pleads these claims in the alternative to the extent required. Fed. R. Civ. P. 8(d).

### COUNT ONE

### Retaliation Under the False Claims Act, 31 U.S.C. § 3730(h)

75.    Mr. Hogeland incorporates the preceding paragraphs.

76.    Mr. Hogeland was an employee protected by 31 U.S.C. § 3730(h).

77.    He engaged in protected activity: he reported, investigated, objected to, and tried to stop SpaceX's use of non-specification paint on federally funded and federally contracted work, and he gathered or attempted to gather work orders, purchase records, and photographs because he intended to stop or escalate the practice.

78.    He reasonably and in good faith believed that SpaceX's conduct could cause false claims, false records, false certifications, or payment for nonconforming federal-contract work. His conduct was lawful activity in furtherance of an FCA action or other efforts to stop one or more violations of the FCA. 31 U.S.C. § 3730(h)(1).

79.    SpaceX knew of Mr. Hogeland's protected activity through Kirkpatrick, Conway, Human Resources, and other supervisory and management personnel, and it knew he intended to escalate the issue.

10

80.    SpaceX terminated Mr. Hogeland because of his protected activity. The termination was close in time to his complaints and escalation efforts, the termination letter gave no reason, and SpaceX's asserted or unstated reason was pretextual.

81.    SpaceX's conduct violated 31 U.S.C. § 3730(h). Mr. Hogeland is entitled to all relief necessary to make him whole, including reinstatement or front pay, two times the amount of back pay, interest on the back pay, special damages, litigation costs, reasonable attorney's fees, and all other relief allowed by law. 31 U.S.C. § 3730(h)(2).

## COUNT TWO

### Wrongful Discharge in Violation of Texas Public Policy
### (*Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733 (Tex. 1985))

82.    Mr. Hogeland incorporates the preceding paragraphs.

83.    Texas forbids an employer to discharge an at-will employee for the sole reason that the employee refused to perform an illegal act carrying criminal penalties. *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985).

84.    SpaceX directed Mr. Hogeland to keep coating federally specified components with non-specification materials and to paint over rust, in furtherance of billing the United States for a specification SpaceX was not meeting, and conduct that exposes its participants to criminal liability for defrauding the government. *See* 18 U.S.C. §§ 287, 1001.

85.    Mr. Hogeland refused to continue performing that work, and SpaceX discharged him for that refusal.

86.    Mr. Hogeland is entitled to actual damages, including lost wages, benefits, and stock and cash compensation, and, on a showing of malice, exemplary damages.

## COUNT THREE

11

**Disability Discrimination Under the Americans with Disabilities Act, 42 U.S.C. § 12112**

87.　Mr. Hogeland incorporates the preceding paragraphs.

88.　The ADA forbids a covered employer to discharge a qualified individual because of disability. 42 U.S.C. § 12112(a). SpaceX is a covered employer; Mr. Hogeland is a qualified individual who could perform his job's essential functions; and his anxiety and depression are a disability, a record of a disability, or a condition SpaceX regarded as a disability. 42 U.S.C. § 12102.

89.　SpaceX discharged Mr. Hogeland because of that disability. The discharge came within days of his disclosure, carried no stated reason, and rested on no misconduct — the marks of pretext.

90.　Mr. Hogeland is entitled to the ADA's remedies, including back pay, reinstatement or front pay, compensatory and — on the requisite showing — punitive damages under 42 U.S.C. § 1981a, and attorney's fees and costs.

## COUNT FOUR

**Retaliation Under the Americans with Disabilities Act, 42 U.S.C. § 12203**

91.　Mr. Hogeland incorporates the preceding paragraphs.

92.　The ADA forbids retaliation against an employee for opposing disability-based mistreatment or for seeking the employer's help with it. 42 U.S.C. § 12203(a).

93.　Mr. Hogeland engaged in protected activity when he disclosed his disability to Human Resources and asked it to address his lead's mistreatment. SpaceX knew of that activity and discharged him within days, giving no reason.

94.    Mr. Hogeland is entitled to back pay, reinstatement or front pay, compensatory damages, and attorney's fees and costs.

## VII.  DAMAGES

95.    Mr. Hogeland seeks all damages and relief recoverable under the claims pleaded above, including back pay; two times back pay and interest on back pay under 31 U.S.C. § 3730(h)(2); front pay or reinstatement; lost benefits; lost stock, equity, stock options, stock awards, cash-payment awards, bonuses, and related compensation; consequential damages; compensatory damages for emotional distress and other mental anguish; ADA compensatory and punitive damages under 42 U.S.C. § 1981a and Texas exemplary damages, as permitted; special damages; litigation costs; reasonable attorney's fees; and prejudgment and postjudgment interest.

## VIII.  JURY DEMAND

96.    Mr. Hogeland demands a trial by jury on all issues triable to a jury.

## IX.  PRAYER

97.    For these reasons, Mr. Hogeland respectfully asks the Court to enter judgment in his favor and against SpaceX and to award him: back pay; two times back pay; interest on back pay; reinstatement or front pay; lost benefits; lost equity, stock awards, stock options, cash-payment awards, bonuses, and related compensation; compensatory and punitive damages under the ADA and 42 U.S.C. § 1981a, and exemplary damages under Texas law, as permitted; special damages, including emotional-distress and consequential damages; litigation costs; reasonable attorney's fees; prejudgment and post judgment interest; and all other relief, at law or in equity, to which he is justly entitled.

13

Respectfully submitted,

**VETHAN LAW FIRM, P.C.**

By: /s/ *Charles M.R. Vethan*

Charles M.R. Vethan
State Bar No. 00791852
Joseph L. Lanza
State Bar No. 00784447
Lauren A. Wilman
Texas Bar No. 24130805
1300 McGowen Street
Houston, Texas 77004
Telephone: (713) 526-2222
Facsimile: (713) 526-2230

***ATTORNEY FOR PLAINTIFF***
***TRAVIS HOGELAND***

**FRCP 5 Service Email:**
**edocs@vethanlaw.com**

14